1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                       **DISTRICT OF NEVADA**

10

11   ROBERT DAISLEY,                    )          3:16-cv-00519-HDM-WGC
                                        )
12                   Plaintiff,         )
                                        )          ORDER
13   vs.                                )
                                        )
14   BLIZZARD MUSIC LIMITED (US) and    )
     JOHN MICHAEL OSBOURNE,             )
15                                      )
                     Defendant.         )
16                                      )
     _____)
17
          Before the court is defendant John Michael Osbourne's
18
     ("Osbourne") motion to dismiss for lack of personal jurisdiction
19
     pursuant to Federal Rule of Civil Procedure 12(b)(2), Osbourne and
20
     co-defendant Blizzard Music Limited (US)'s ("Blizzard US") motion
21
     to transfer pursuant to 28 U.S.C. § 1404(a), defendants' motion to
22
     dismiss or stay the action due to binding arbitration agreement,
23
     and defendants' motion to dismiss for failure to state a claim
24
     pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule 9(b)
25
     (ECF No. 8).  Plaintiff Robert Daisley ("Daisley") has opposed (ECF
26
     No. 14), and defendants have replied (ECF No. 16).
27
          In his complaint, filed in state court on August 8, 2016 and
28

                                       1

removed to this court on August 31, 2016, Daisley asserts that he co-authored a number of songs with defendant Osbourne and others in late 1979, 1980, and 1981.  In 1980 and 1981, Daisley entered into songwriter agreements that assigned his copyright interest in the songs to Blizzard UK.  Blizzard UK is an entity incorporated in the UK and owned primarily by Osbourne.  Under the terms of the agreements, Blizzard UK acted as the publisher and administrator for Daisley's share of the songs and was responsible for collecting and distributing royalties to Daisley.  Blizzard UK was to pay 90 percent of all royalties received on Daisley's behalf to Daisley, retaining a ten percent fee for itself.

Daisley understood that administration of the copyrights within the United States was done by Blizzard US, an entity created and controlled by Osbourne.  However, Daisley asserts that he did not learn until 2014 that Blizzard US was retaining fifteen percent of the royalties it received before remitting the royalties to Blizzard UK for distribution to Daisley.  Daisley asserts that Osbourne, Blizzard US, and Blizzard UK concealed this fact so that Daisley would not know of the additional deductions.  Daisley asserts that the songwriting agreements do not allow Blizzard US or Blizzard UK to take an additional fifteen percent deduction. Daisley accordingly commenced this action against Osbourne and Blizzard US for fraud and an accounting.

Daisley resides in Australia.  Osbourne resides in Los Angeles, California, and England.  Blizzard US is incorporated in Nevada and has a post office box and bank account in Nevada, but its books and records are physically located in California and its administration of licenses is conducted primarily in California.

The court first addresses the defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

The court may transfer venue to any district "where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of showing that an adequate alternative forum exists. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 n.22 (9th Cir. 2000). "Transfer is appropriate when the moving party shows: (1) venue is proper in the transferor district court; (2) the transferee district court has personal jurisdiction over the defendants and subject matter jurisdiction over the claims; and (3) transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice." *Pfeiffer v. Himax Techs., Inc.*, 530 F. Supp. 2d 1121, 1123 (C.D. Cal. 2008).

A.   Proper Venue

While Blizzard US is incorporated in Nevada, the record reflects that its business is conducted almost exclusively in California. Osbourne also resides in California. The Central District of California is a district where both defendants reside and is therefore a proper venue for this action. *See* 28 U.S.C. § 1391(b)(1).

B.   Personal and Subject Matter Jurisdiction

Defendant Osbourne resides in California. The federal district court in California therefore has personal jurisdiction over Osbourne.

Blizzard US is incorporated in Nevada, has a bank account in Nevada, and has a P.O. Box in Nevada. However, Blizzard US has no offices in Nevada, all of its books and records are located in

3

California, and the business of Blizzard US is conducted primarily out of California.  There is no evidence that Blizzard US conducts any substantial business in Nevada.  Specifically, Blizzard US is a music publisher, and the review, negotiation, and granting of license requests are done by Sharon Osbourne, on defendant Osbourne's behalf, principally from her office in Los Angeles, California.  (ECF No. 22 (Sharon Osbourne Decl. ¶¶4-5)).  As Blizzard US's business is conducted primarily from Los Angeles, California, which is also the location of its books and records, the record supports a conclusion that Blizzard US's principal place of business is in California.  Thus, the federal district court in California would have personal jurisdiction over Blizzard US.  The defendants have conceded that California courts have jurisdiction over Blizzard US.

Finally, the parties do not dispute that the federal district court in California would have jurisdiction over Daisley's claims.

C.   Convenience of the Parties and Witnesses and Interests of
     Justice

The court must weigh several factors in determining whether transfer is appropriate: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to plaintiff's cause of action in the chosen forum; (6) the differences in the cost of litigation in the two forums; (7) the availability of compulsory process to compel witnesses; and (8) the ease of access to sources of proof.  *Jones*,

211 F.3d at 498-99.

1. Where Relevant Agreements were Negotiated and Executed

It appears that the only agreements at issue in this case are the songwriter agreements.  While Daisley argues that these agreements are not relevant to this case, he does cite them in his complaint and defendants rely on them in their motion to dismiss.  The record reflects that the agreements were executed in England.  (ECF No. 8-3 (Sharon Osbourne Decl. ¶5)).  There is no evidence pointing to either California or Nevada as relevant to the agreements' negotiation and/or execution.  This factor is therefore neutral.

2. State Most Familiar with Governing Law

The parties agree that Nevada law applies to Daisley's claims.  As this court is more familiar with Nevada law than a court in California might be, this factor weighs against transfer.

3. Plaintiff's Choice of Forum

Daisley argues that defendants have failed to overcome the strong presumption in favor of a plaintiff's choice of venue.  However, while a plaintiff's selection of a forum is generally due heavy deference, deference is reduced for foreign plaintiffs.  *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001); *Gemini Capital Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998); *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1141 (C.D. Cal. 2005); *see also Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1207 (9th Cir. 2009).  Even so, "less deference is not the same thing as no deference."  *Lueck*, 236 F.3d at 1143.  Daisley is not a resident of Nevada.  Accordingly, while Daisley's choice of Nevada entitled to deference, it is not

entitled to great deference.  This factor therefore weighs against transfer, but only slightly.

    4. Parties' Contacts with Nevada

    Daisley does not assert any contacts with Nevada.  Defendant Osbourne has had some contacts with Nevada, but they appear to be sporadic and infrequent and not particularly relevant to the dispute in this case.  (*See* ECF no. 7-2 (John Osbourne Decl.)).  The party with the most Nevada contacts is defendant Blizzard US, which is incorporated in Nevada, and has a Nevada bank account and P.O. Box.  However, the record does not reflect any additional contacts with Nevada.

    When compared to the parties' contacts with California – where Osbourne lives and the business of Blizzard US is conducted – it is apparent that the parties' contacts with Nevada are not as substantial as those with California.  Given that Daisley has no connection to Nevada and defendants' contacts with California, including that it is the location of the books and records of the business and where the review, negotiation, and granting of licenses is undertaken, outweigh their contacts with Nevada, this factor favors transfer.

    5. Parties' Contacts Relating to Daisley's Claims

    Insofar as Daisley's claims are concerned, it is unclear that Nevada has any relation to them other than the fact that one of the defendants is incorporated in Nevada and maintains a bank account and P.O. Box in Nevada.  There is no allegation that the wrongdoing that is the basis of the complaint occurred in Nevada other than the fact that one of the defendants is incorporated here.  Nor is there any persuasive argument that the effects of the alleged

wrongdoing were felt in Nevada.  Because the parties' contacts with Nevada relating to Daisley's claims are not substantial and the actions that Daisley complains of did not take place here, this factor also favors transfer.

6. Cost of Litigation

No individual person involved in this litigation resides in Nevada.  All individuals reside in either California or abroad. Compared to Reno, Los Angeles is an easier and more direct destination for most witnesses coming from abroad.  This means that it is likely more cost-effective for litigation to take place in Los Angeles.  Accordingly, this factor slightly favors transfer.

7. Availability of Compulsory Process to Compel Witnesses

No non-party witnesses have been identified as residing in Nevada.  Defendants have identified one non-party witness who resides in California – Sharon Osbourne.  However, defendants have not asserted or established that Sharon Osbourne would be an unwilling witness whose testimony would need to be compelled.  All other potential witnesses are outside the jurisdiction of either Nevada or California.  Accordingly, this factor slightly favors transfer.

8. Access to Sources of Proof

Blizzard US's books and records are in California and England. None are in Nevada.  However, Blizzard US does have a bank account in Nevada, though its relevance to these proceedings – if any – is not clear.  All witnesses are in either California or abroad.  As discussed above, for those coming from abroad Los Angeles is an easier destination to reach.  Accordingly, access to sources of proof will be overall easier in California than in Nevada.  This

7

factor therefore favors transfer.

    9. Additional Factors

        i. Execution of Judgment

Daisley argues that any successful judgment against Blizzard US would be executed in Nevada, thus weighing against transfer. The court finds this argument unpersuasive.  A judgment from California may be executed in Nevada to the same degree as a judgment from Nevada, with only the additional step of registering the judgment with this court.  Daisley neglects to mention where a judgment would be executed against defendant Osbourne, but it seems most likely that it would be executed, at least in part, in California.  As Daisley would thus be required to register a foreign judgment wherever this case is tried, this factor is neutral.

        ii. Personal Jurisdiction

Finally, Osbourne argues that this court lacks personal jurisdiction over him.  While the court declines to directly decide this issue because the action will be transferred,[1] it is unlikely that Daisley could establish specific jurisdiction over Osbourne. In order to establish specific jurisdiction in a torts case, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

---

[1] The court can transfer under § 1404(a) regardless of whether it has personal jurisdiction over the defendants.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962); *Stanbury Elec. Eng'g, LLC v. Energy Prod., Inc.*, 2016 WL 3255003, at *1 (W.D. Wash. June 13, 2016); *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1211 (D. Haw. 2002) ("[T]his court may transfer venue under . . .§ 1404(a) . . . without regard to whether it has personal jurisdiction over" the defendant.).

1    *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128

2    (9th Cir. 2010).  Daisley is a resident of Australia and has no

3    connection to Nevada.  Daisley has not persuasively argued that the

4    effects of defendants' alleged actions were otherwise felt in

5    Nevada.  Accordingly, Daisley's contention that the court has

6    specific jurisdiction over Osbourne is tenuous.  The argument that

7    the court might have general jurisdiction over Osbourne based on

8    anything other than an alter ego theory is plainly without merit.

9    Daisley's allegations supporting the alter ego theory are largely

10   conclusory and do not make a "prima facie showing of jurisdictional

11   facts to withstand the motion to dismiss.'"  *Id.* at 1127.  A

12   determination of the court's jurisdiction would therefore require

13   the parties to engage in jurisdictional discovery prior to

14   discovery on the merits of the underlying action.  This would be

15   costly and delay the resolution of this case.  The court concludes

16   that judicial economy therefore favors transfer to a court that

17   clearly has jurisdiction over both defendants.

18        After considering and weighing all the relevant factors in

19   this case, the court concludes that on balance transfer to the

20   Central District of California is appropriate.

21   /

22   /

23   /

24   /

25   /

26   /

27   /

28   /

9

**Conclusion**

     In accordance with the foregoing, defendants' motion to transfer is **GRANTED.**  This action is hereby transferred to the District Court for the Central District of California.  The remaining motions raised in the defendants' omnibus motion are denied without prejudice to renew.

     IT IS SO ORDERED.

     DATED: This 22nd day of February, 2017.

                         UNITED STATES DISTRICT JUDGE